Good morning. We have four cases to hear this morning. Council, we've read your briefs, the authorities cited in your briefs, and we've looked at at least portions of the record, so in the limited time that you have this morning, get straight to the heart of your argument. Do be mindful of our time. Pay attention to our traffic light system. When the red light shines, it's time to finish up. If you have some rebuttal time, you won't lose it. Even if you're still answering a question from the court, you can finish your answer, of course, and you'll be on our time when you do it. Our first case this morning is United States v. Green. Ms. Strickland. Good morning. May it please the court. This court must, at minimum, vacate Mr. Green's sentence because the district court increased his guideline range by a total of eight levels without evidence or findings of fact to support any of the three sentencing enhancements that applied. And because Mr. Green's clear and repeated objections to the factual allegations in the PSR put the government on notice that it would be required to meet its burden and produce evidence supporting the enhancements, and it failed to do so, this court should not allow the government to present evidence on remand. It seemed to me the one that I wanted to talk most about was the obstruction enhancement. I'm a little bit puzzled by this. So Judge Lawson found that there was obstruction when your client told the girlfriend, you know, don't tell anybody about this. And the government court seems to think that that doesn't matter. If the obstruction enhancement is erroneous, it seems to me might well matter. But I really wondered whether the district court was really wrong because soon afterward when the officers encounter your client, he denies, he immediately denies repeatedly that he has a firearm, disclaims any knowledge of where it came from, which would suggest to me that even then and earlier when he's telling, I've forgotten her name, when he tells her, you know, don't tell anybody about this, that he's thinking not just about the shooting that occurred immediately before, but the fact that he knows he's not supposed to have a firearm at all. And when you couple that with the evidence later where he tells the officers, oh, ain't got no gun, ain't got no gun, ain't got no gun, that at least part of his thinking is he doesn't want anyone to know he has a gun. And if that's true, then it seems to me this is obstruction of the offense for which he was prosecuted. Your Honor, I think I have a few responses to that. So to begin with, Your Honor, I think you suggested that Judge Lawson found that Mr. Green committed obstruction by threatening the alleged aggravated assault victim's wife or girlfriend, Ms. Groby. But I think we can't even get there because there's no facts to support that. That is in the PSR. It says that, you know, Ms. Groby reported that Mr. Green threatened her, but he objected to that. He objected to those facts specifically. He named that paragraph in the PSR. He said that the court should not rely on Ms. Groby's, any statements from Ms. Groby because she's not credible and not reliable. He specifically asked the court to conduct its fact-finding obligations and not just take the allegations in the PSR as true. And he specifically named that paragraph with the description as something he was objecting to. And the government just came forward with absolutely no evidence to prove it. There was never, nothing admitted in the sentencing hearing to show that this threat was ever made. I believe they just said that it, you know, there was a video turned over in discovery, but it was never presented to the court at all. So there's just no evidence to support any of that aspect. So I think you can't even get to whether, you know, it could factor into some later possible obstruction because you don't have that piece. The government just didn't present any evidence of it. Was it in the police report? I'm sorry, Your Honor? Was it in the police report? I don't believe there were any police reports admitted either. I don't know if you're referring to, I think the only police report referenced in the sentencing hearing was about the gun that was elected. Yeah, that was stolen. Okay. Yes. Yeah. The police report related to Ms. Groby, nothing was admitted. Yeah, and it, yeah, that's with respect to a different enhancement. Okay. Yes, Your Honor. That's correct. So I understand the government has conceded on this issue as to, like, the specific guideline application, but I don't think this court even gets there because there's just not the facts to support it because the government never admitted any evidence of it despite being on notice of its obligation to. Could I ask you to address the stolen gun enhancement? So the way I understand it, and just, you know, correct me if I'm wrong, but the way I understand it is that your client admitted a document that described the gun as stolen, and then that would be the basis for saying that there was evidence that the gun was stolen. What's your response to that? Yes, Your Honor. So Mr. Green attached to his PSR objections two things, well, two things relevant here, relevant here. The report saying that the gun was stolen and then his receipt from where he bought the gun and the serial numbers match is a receipt from Gander Mountain. So, you know, first of all, none of those things were actually admitted into evidence at the sentencing hearing. So our position would be that they're not really properly before the court for consideration just because no one admitted it. He just attached it and it wasn't even really discussed other than the government just referencing, again, that they had it. Did the district court make a, I mean, how And I guess that's what I'm trying to, if, you know, let's assume that at the sentencing hearing the district court just says, okay, you're objecting to the, you know, stolen gun enhancement. The government says that it should apply. I hereby find that it applies, right? I think that's basically what the district court did, something like that. Yes, Your Honor. What the district court just said overruled. Right, yeah. So, I mean, maybe I'm wrong, but I just, it seems like it's our job to say, look, was there evidence in the record that supported the district court's finding? And I guess the government points to this report. Can we say that the district court's finding is erroneous if that report exists? Well, Your Honor, if the court is going to consider that report, then I think it has to be considered in conjunction with the receipt too, because Mr. Green is putting it in to say, look, I understand that this is what they're relying on, but it's not reliable. So, he actually... But you introduced it into evidence. Your client introduced the police into evidence, the police, because the argument was, well, it wasn't stolen yet. Of course, the report says that it had been stolen months earlier. And it seems to me once you've put that report into evidence, or the defense says, that the district court can rely upon it. Your Honor, I think as I alluded to earlier, I think it was attached to the PSR objections, but no one ever admitted it in the sentencing hearing. But if the court is going to consider it, then it's hearsay, and the court can consider hearsay if it's reliable, right? We don't have any findings by the district court about what it considered in finding, if it found that it was reliable, because we just don't have really any word from the district court at all. I mean, I don't know if at a sentencing hearing, anything more is required to introduce it than to attach it to your objections. And if the district, and if you attach it, if the defense attaches it to the objections, it didn't seem to me that the defense was objecting in any sense to the factual contents of the police report. Am I wrong? Your Honor, I don't think he was, because he's attaching it with the receipt. So the police report says that it was, you know, the police report which is made after Mr. Green is arrested. So then presumably the police are going to this person who the gun comes back to and saying, you know, what happened to your gun? So I think there's reliability issues there alone. But the police report says that it was stolen between June and August of 2017. And then Mr. Green attaches his receipt from March of 2017. So he's saying there, you know, this cannot be true. I bought it before then. So the police report is unreliable. So in addition to the fact that it was made after he was arrested, you know, I think there's other problems with just relying on this police report. Well, didn't he just have a misunderstanding of the import of the report? Because the period when it was stolen was before he possessed it, right? Right. Yes. When it was — when the report says that it was stolen, it's before he possessed  Right. And he tried to argue that because the report was issued later, then somehow that couldn't prove that it was stolen. But he was just wrong about that, wasn't he? Your Honor, I think he was making kind of a twofold objection to it. I believe he was saying, like Your Honor is saying, that I didn't know it was stolen, and so therefore it shouldn't apply. But I think he was also saying factually there's no showing that it's actually stolen because he specifically objects to the fact that the gun was stolen. And that's in the — even in the PSR writer's summary of the objections that Mr. Green objects to the finding that the gun was stolen, period. So I believe he's both arguments here. And he's objected to the facts of it, too. So I think that's sufficient for him, especially as a pro se party, you know, that we're liberally construing his pleadings, that that is enough to — that he has objected. Okay, Ms. Strickland, you've saved five minutes for rebuttal. Let's hear from Mr. Walker for the government. Good morning, Your Honors, and may it please the Court, Stuart Walker on behalf of the United States. I want to start with the stolen gun enhancement. Well, let's start with obstruction. It seems to me that — so defense counsels persuaded me that maybe that you're right to concede that that was error. We don't know whether the district court would have imposed the same sentence in the absence of that enhancement. That would at least require us to vacate and remand, it seems to me. A couple of things, Your Honor. I'm not sure I would agree that a remand would be appropriate. I know you did in your brief, but I don't understand why that wouldn't be true. Okay, if I could take the first part of Your Honor's concern first. We're standing by our concession that the enhancement doesn't apply, but I want to put the government's concession on a slightly different footing than the position we took in our brief. In our brief, our concession really centered around what we understood to be the scope of the obstruction of justice enhancement. That is that you couldn't obstruct an investigation that hadn't begun yet. We've rethought that, and we don't think — Yeah, that's — well, the commentary to the guidelines shows that you're plainly wrong about that. I'm walking back from that concession on that basis. But you're not walking back the concession that it was erroneous. That's right. Unfortunately, I think I'm constrained to agree with my friend. Right. There's a lack of evidence that the threat was made. She persuaded me about that, too. Okay. All right, but — all right, remedy. Okay. Let's say this is the only enhancement I think is erroneous. I don't see how I can look at this record and say that I know that the same sentence in the absence of that enhancement. I think when the district judge imposed the 120 months, he recited some of the factors from 3553A. Part of that was his criminal — Part of that is the guideline range. That's one thing that the district court took into consideration for sure, but he singled out some things like his criminal history and things that — Yeah, but I mean — but this guideline range is part of what's being considered. That's correct. It's different now if that enhancement's erroneous. The guideline range goes down to 120 to 150, but that 120 is still the statutory maximum. True, but does it mean that he wouldn't be willing to vary below it? It does, Your Honor. The only point I would make, and I take your point, but the point that I would make is that we are making arguments before the district court at sentencing that he argued for a downward variance from anything below the guideline range. His whole argument was about a miscalculation of the guideline range, and so it's not clear to me that he's preserved an argument that the 3553A factors would warrant a sentence below the bottom of the guideline range, even recalculated at the 120 to 150. Could you address the other enhancement that we haven't talked about, which is the one for using the gun during the commission of another offense? Because I think we would agree if he wins on both the obstruction of justice and that one, then his guideline range goes substantially different, right? It goes six points. Right, yeah. So what's the evidence that he used this gun in the commission of another offense? At the pretrial conference, the district court held a talk with him, and he said, did you shoot this person? And he said, yes, I did. And he said, you shot him? He said, yes, I did, but it was in self-defense. Now, so he admitted that he shot this person with a gun, which I think everybody would agree is an aggravated assault. He said he did it in self-defense. The district court was not required to credit the assertion of that. Yeah, but there are a couple of weird things about that, right? One is it's at a pretrial conference, not at trial. So he's not testifying. He's acting as his own lawyer, right, at that pretrial conference. I'm just getting the, he's his own lawyer at the pretrial conference.  The other is that when he says he did it, he says it was justified, i.e., he denies, he admits that he did it, but he denies that it's a crime. So is there evidence in the record that contradicts his denial that it's a crime? Your Honor, well, let me see if I can attack it this way. It was self-defense because he touched me on the back of the neck, and I think what you can read from the fact that the district court applied the enhancement. This court, of course, infers any subsidiary fact findings in support of the application of that enhancement, and I think what's fair for this court to infer is that the district court didn't credit the assertion that he touched me on the back of my neck. Therefore, I was entitled to shoot him. Was he under oath when he was speaking at the pretrial conference? Don't know, I would doubt, seriously. Yeah, I mean, he's just standing there on the podium like a lawyer talking to the district judge, right? So, I mean, do we even consider statements that are made by people that are not under oath to be evidence? I guess in a strictly formal sense, it's not evidence, although. Yeah, and really in no sense is it evidence. But if he's representing himself, it's an admission, just as it would be if counsel was representing him, right? It'd be the same way we call admissions in juries. And so, yeah, let's cut it like that. Can you make a credibility determination regarding a counsel's admission? When the counsel is departing, I think that's a fair thing for a court to do. I mean, I'm not certain just . . . Well, if the position is that he's entitled to a justification defense because he had been tapped on the shoulder or whatever it was that he had touched him, that doesn't support a justification defense, does it? It does not. You credit it, for that's what happened. It doesn't support a justification defense. That's right. I'm sorry to be imprecise. When I say credit, I just mean, yes, he's taking that at face value. That is, in fact, what happened. But I'm saying as a matter of law . . . He's not saying that it's not credible. He's saying, okay, except that, that doesn't support a justification defense. That's exactly the point I'm trying to make, yes, Your Honor. So I think his own statements belie this argument now that there was no evidence or nothing at all to support the fact that an aggravated assault had been committed. Now, let me drill down a little bit on that. What his position is in the district court, every time he objects to this enhancement, his position is that crime hasn't been proven yet. I haven't been found guilty of that. So the center of gravity of this objection is not, I didn't do this thing other than that one comment about self-defense. It's that you can't rely on it because I haven't been convicted yet. But we know that doesn't matter because the other felony offense doesn't have the criminal charge being brought or conviction being obtained. That's what the guidelines commentary tells us. And he admitted that he shot and his only excuse for it is that he had been touched by the victim. Yes, Your Honor. That's right. And that's in the record at ECF 292 at page 10. The person I shot had touched me on the back of my hand. So the question really is, based on that record, is there enough for the district court to find by preponderance that this was a possession in connection with another felony offense? That's the right inquiry and our position is that the record does support the application of the enhancement. If I might mention the stolen firearm enhancement, I think this is really important. And I would push back vigorously on the assertion made by my friend on the other side that he somehow denied the gun was stolen. He did not. If you look carefully at his written objections to the PSR at ECF 260 and ECF 270, every time he objects to the application of this enhancement, it has nothing to do with the gun being stolen. He erroneously thinks that the fact that it was not reported stolen until after his arrest is the reason the enhancement doesn't apply. And I've scoured the objections in his statements at sentencing and he never denies the fact of it being stolen. And that's critical because the other side also says that the district court never adopted the factual allegations in the PSR. That's the line by the record also because the statement of reasons at ECF 286, page one, says that the district court accepted, or I'm sorry, adopted the PSR without change. So you have an allegation that it was stolen, number one. That allegation as to the stolenness, if you will, of the gun is never denied. The court adopts that and that's evidenced by the statement of reasons. But above all of that, you have the police report that the court has made a, you know, has said he introduced into evidence. So our position is he can't ask the court to consider it for one thing and then turn around and use it as a shield for another and say, well, it's not reliable or it has hearsay. He invoked it. He brought it to the table at sentencing, asked the court expressly to take it into consideration based on his erroneous interpretation of the enhancement. But the fact remains he can't use it as a sword and a shield. And so he can't, he's not in a position to complain, we think, about its reliability now. And on top of that, he never challenged the reliability of it. He never said that the statement made by the gun theft victim was somehow unreliable. So we think that assertion was never really made. So to Judge Bradford's point earlier, what the court is doing in the posture right now is to say, does the record support the application of these enhancements? Whether it was, you know, tendered expressly at a sentencing hearing or not, the record reflects enough evidence to warrant the application of the stolen firearm enhancement. Turning for a moment to the attack on the district court's rejection of the justification defense to the 922-G charge, we think... Well, can I get you, before you go to that, I have another question about the enhancements. So one of the debates between the government and the defendant here is that what would happen on remand? So let's just assume that we do remand this. You argue that the government, I think you argue this, that the government should get another chance to prove the enhancements. The defendant argues that, no, you don't get that. Would you address that? I guess I have two questions about that. One, what is the right rule? And two, should we even address that? Is that even wise for us to address or is that something that y'all should be able to fight about at the district court if we do remand it? Without being able to call the name of a specific case, Your Honor, I think there is support in the case law for the view that when there's a vacatur of the sentence that you can go back and relitigate enhancements in the district court on remand. I'm not certain, you know, I don't know that I have a position on what I would like Your Honors to write in an opinion, but I think leaving it open for sure and letting the parties litigate it in the district court, if it then results in another appeal, I guess we could take up whether that was appropriate or not. But I think there's support in the case law that the parties can go back and relitigate enhancements on a remanded. Even if the government didn't raise that below? Even if the government didn't, we could submit evidence that it didn't below on remand? I think so, Your Honor. I mean, I think we've got a new sentencing record. I mean, we've got sort of a wipe the slate clean, now we're back before the court again to impose sentence on this conviction. And I just want to make sure I understand, I mean, these issues were raised, so we wouldn't be raising a new enhancement that wasn't raised. I think what you're talking about is maybe bolstering the evidence. Submitting new evidence, yeah. Yes, Your Honor. And do you think there's authority in your brief to support your proposition? I don't recall that we briefed this issue in that level of detail, no, Your Honor. If I might then turn back to the justification defense. They've said that there was not. So, Mr. Walker, if you want to get into things that weren't argued by your adversary, then you're going to, you know, open it up to arguments to which you won't have the opportunity to respond, but that's your business. No, I take Your Honor's point. That's fine. And if there are no further questions from the bench, then we would stand on our briefs in the argument this morning. Thank you. Okay, Ms. Strickland. Thank you, Your Honor. Just a few points I'd like to address from the government. First of all, I just don't agree with the government that there was no factual objection to the gun being stolen. Objections to the PSR. I mean, he objects that, sorry, I lost it. I had it for the court. He's specifically objecting. Well, what he argued, quote, the gun was not legally stolen at the time the defendant was found to be in possession of the gun, and he pointed out that the report stated the gun was stolen between 6-1-17 and 2-1-17 out of the owner's car. He contended that this report established the legal fact the defendant was not in possession of a stolen gun on the date of arrest. His argument is about the date it was stolen, not whether it was stolen, right? I don't agree with that, Your Honor. I believe he's objecting to both. I think he's doing both grounds, and he said specifically in his PSR objections on page two, the defendant objects to the allegation and the PSR writers erroneously finding that the gun was stolen. And then he's attaching that receipt, and that's a factual objection. That is saying, you know, here's when he says it was reported stolen. It obviously was not stolen then because I have this receipt showing that it was purchased prior to that. So I believe that he's preserved that objection, and again, he's pro se, and it should be liberally construed in his favor, and the government had the burden of producing evidence on that. As far as the justification defense? Well, he didn't argue it. I'm sorry, as far as the justification enhancement. Sorry, Your Honor. As far as that enhancement, you know, the court discussed with the government the fact that, you know, Mr. Green has proffered, you know, what his self-defense theory would be, and I think there's a few problems with relying on that. Yeah, when you say it was a proffer, could you just, I'm going to look at this in the Well, Your Honor, I think it's not so much can you please explain to me, as you know, the court was never interested in it. So the court was always, its position was that what happened at the church is what matters. So Mr. Green is trying to throw this out there and trying to get out his defense, and the court is just really not having it. So there's not a discussion of it really, and there's not, you know, he's not permitted to elaborate on it. You know, what is it that he's describing as a touch in the back of the neck? Because the court is just never interested in the defense at all. But this is his argument for why he should get a justification jury instruction as to the felon in possession charge that he was actually charged with, right? Correct. Okay, so that's, so it doesn't come out, and I mean, just correct me if I'm wrong, but it doesn't come out from some kind of factual statement where the judge is like, could you please describe to me what you allege occurred? He's just saying, this is why I want my justification jury charge. Yes, I believe that's correct, Your Honor. Okay. There's not enough there for the court to somehow, you know, justify this enhancement that the government had the burden of putting up evidence on. And they kept him from putting up evidence about it at the trial. It wasn't discussed anywhere else in the record. And then all of a sudden, it's back at sentencing, and he's getting four points for it. And so I think there's not a lot of cases in this court where the court is dealing with these kind of justification defenses on this enhancement. And when you say it's back at sentencing, I take it there was no discussion of the fact that he had this admission or whatever you want to call it at the pretrial conference? Correct, Your Honor. At sentencing, you know, the government is just saying, oh, well, he's been charged with it. You know, they're not saying he admitted to it, and this court doesn't have to credit what he has said before. There's no discussion like that. It's just, you know, he was charged in state court with this. So really the question is whether the fact that he does not contest that he shot the individual, and he does not contest that he's been charged by the state with aggravated assault, whether that's enough to support the enhancement? Yes, Your Honor. And I believe the answer to that is clearly no, because if the conduct is justified, then there is no aggravated assault. There's no felony. It's not a crime punishable by one year of imprisonment. And if he were in the Georgia state court, they would have to disprove that defense beyond a reasonable doubt. So I believe the government had the burden once he says it was in self-defense to show that it wasn't. And I think in the few unpublished cases, I know there's a couple recently, Durham and Weaver, where this has come up. There's been evidence presented that the court could look at it and say, I'm looking at the evidence. I'm evaluating the testimony of these witnesses that described what happened. And that's why I'm not crediting your statement. So I believe the government failed to meet its burden here to produce any evidence of it, and it's insufficient. Thank you, Your Honor. Thank you. And we note that you were appointed by a CJA appointment, and we really appreciate you accepting the appointment and discharging your duty ably this morning, Ms. Strickland.